# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JENNIFER PEARCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-10-0705-HE |
| | ) | |
| ORAL AND MAXILLOFACIAL | ) | |
| ASSOCIATES LLC, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants Oral and Maxillofacial Associates, LLC ("OMA"), Gallagher Benefits Services, Inc. ("GBS"), and Molly Bernard (collectively, "defendants") have moved to dismiss plaintiff's claims under the Oklahoma Credit Services Organization Act ("OCSOA"), 24 Okla. Stat. §§ 131 et seq.[1] Defendants previously objected to plaintiff's effort to add these claims, via amended complaint, on the basis they were preempted by federal law and that any amendment to add them would be futile. [Doc. #34]. The court permitted the amendment, concluding it was premature to resolve the substantive issues at that point. The OCSOA claims are now included in the most recent amended complaint and defendants have moved to dismiss them on the basis that they fail to state a claim.[2] Plaintiff has responded, and the motions are at issue.

---

[1] The court previously dismissed similar claims under the federal Fair Credit Reporting Act ("FCRA"), in light of the exclusion under 15 U.S.C. § 1681a(x) for third-party investigations. [Doc. #49].

[2] Defendants were given the opportunity to supplement their then-pending motions and have done so. [Doc. #65].

## BACKGROUND

The amended complaint alleges that plaintiff is a former employee of OMA and that she was assigned as a surgical assistant to defendant Dr. William Croom, a licensed dentist. In April 2008, Croom allegedly began engaging in sexually harassing conduct toward Pearce, which conduct allegedly increased in frequency over the course of the next several months. The complaint states plaintiff complained about Croom's conduct to OMA's clinical manager without satisfactory result, that she filed a complaint with state and federal anti-discrimination enforcement agencies, and that OMA conducted an investigation, found no merit to them, and thereafter assigned her to menial duties and cut her work hours. Plaintiff then filed further complaints with federal and state anti-discrimination agencies. Thereafter, OMA allegedly hired defendants GBS and Bernard to conduct a third-party investigation into the allegations against Croom, resulting in a report arising from their investigation. Plaintiff's complaint states that OMA, despite the internal investigation and the third-party investigation, refused to rectify the situation, resulting in plaintiff's constructive discharge.

The claims challenged by the pending motions are those arising under the OCSOA. Plaintiff asserts that defendants GBS and Bernard violated 24 Okla. Stat. § 147 and that defendant OMA violated 24 Okla. Stat. § 148.

## DISCUSSION

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a claim when a party fails "to state a claim upon which relief can be granted." When considering whether the plaintiff's claims should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual

allegations as true and views them in the light most favorable to the plaintiff, the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010) (citation omitted). A claim will be dismissed if "the complaint does not contain enough facts to state a claim to relief that is plausible on its face." Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir. 2007) (internal quotations omitted).

Here, Count 10 of the complaint alleges that GBS and Bernard failed to provide plaintiff with all the information in their files (except for medical information) upon her request, contrary to 24 Okla. Stat. §147. Count 11 alleges that OMA failed to provide plaintiff with notice and a copy of the report created by GBS and Bernard, contrary to 24 Okla. Stat. §148.[3]

Defendants assert a number of arguments in support of dismissing these claims. As they did in their motion to strike previously addressed by the court, they argue these claims are preempted by federal law (the FCRA). They also assert Oklahoma would not recognize a private right of action for claims such as are asserted here. They further assert that the Oklahoma law definition of "consumer report" should be read to be the same as the federal definition (i.e. incorporating the revision/addition of 18 U.S.C. §§ 1681a(d)(2) and

---

[3]*Section 147 provides, in pertinent part, that "[e]very consumer reporting agency shall . . . . clearly and accurately disclose to the consumer . . . A. The nature and substance of all information, except medical information, in its files on the consumer at the time of the request." Section 148 provides, in pertinent part, that "[p]rior to requesting a consumer report for employment purposes, the requester or user of the consumer report shall provide written notice to the person who is the subject of the consumer report. . . . If the consumer requests a copy of the report, the user of the consumer report shall request that a copy be provided to the consumer when the user of the consumer report requests its copy from the credit reporting agency."*

3

1681a(x)), so as to make the state claims subject to dismissal on the same basis as plaintiff's FCRA claims. Defendant Bernard separately argues that the claims against her should be dismissed in any event, as she is not a "consumer reporting agency" under § 147.

The court addresses the preemption issue first, as it ultimately concludes that issue to be dispositive of the present motions.

Federal law preempts state law in three circumstances: (1) where Congress has explicitly defined the extent to which its enactments pre-empt state law, (2) where, absent explicit statutory language, Congress has legislated in such a way as to fully occupy the field, and (3) where state law actually conflicts with federal law. Choate v. Champion Home Builders Co., 222 F.3d 788, 792 (10th Cir. 2000). The first category is considered "express preemption." Id. The second and third categories are viewed as "implied preemption." Id. "Conflict" preemption (the third category) occurs in situations where "it is impossible for a private party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." 222 F.3d at 795 (quoting English v. General Elec. Co., 496 U.S. 72, 79 (1990)).

Although it is difficult to categorize the preemption issue here, due to the nature of the statutory enactment and the nature of the claims being challenged, the court views the present controversy as being in part one of express preemption, where the task is to interpret and apply the meaning of the explicit preemptive provision(s) adopted by Congress. However, as some inferences from the context are necessary, the analysis is at least partly

a matter of implied preemption.[4]

The FCRA includes an explicit section addressed to preemption issues.[5] Section 1681t of the Act provides, in pertinent part:

(a) In general

Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

Subsections (b) and (c) of § 1681t then go on to state various specific exemptions from the general rule in subsection (a), essentially identifying specific categories where preemption is explicitly contemplated. Broadly summarized, § 1681t states a general policy of <u>not</u> preempting differing state laws except to the extent they are inconsistent with the federal act or are within the scope of subsections (b) or (c).

None of the parties appear to argue that any of the express preemption provisions in subsections (b) or (c) apply here. Defendants rely instead on the general language of § 1681t(a), which prevents the FCRA from preempting any state laws regarding consumer

---

[4]*When an explicit preemption provision exists and it "provides a reliable indicium of congressional intent with respect to state authority", there is no need to infer congressional intent from the substantive content of the legislation. <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 517 (1992). However, if the explicit preemption provision does not resolve the issue, resort to an "implied" analysis is proper. <u>Geier v. American Honda Motor Co.</u>, 529 U.S. 861, 869 (2000).*

[5]*A second section, 15 U.S.C. § 1681h(e), is in the nature of a preemption statute and protects persons providing information to a credit reporting agency from certain types of claims. No party has suggested this statute to be applicable here.*

5

information "except to the extent that those laws are inconsistent with any provision of [the FCRA], and then only to the extent of the inconsistency." The relevant question is therefore whether the OCSOA's disclosure and notice requirements for third-party investigations are "inconsistent" with the FCRA, within the meaning of the preemption statute.

It is clear that federal and state law are different in this area. As addressed more fully in the court's December 16, 2010, Order [Doc. #49], Congress has amended the definition of "consumer report" under the FCRA to exclude third-party investigations like that alleged here. Section 1681a(d)(2) of the FCRA excludes from the definition "any communication described in subsection . . . (x) . . . ." Subsection (x) refers to, among other things, third-party investigations into suspected employee misconduct or "compliance with Federal, State, or local laws and regulations . . . ." 15 U.S.C. § 1681a(x). The subsection (x) exclusion was added to the Act in 2003 in response to a Federal Trade Commission interpretation of the FCRA concluding that organizations which conducted such investigations were "consumer reporting agencies" under the Act. *See* [Doc. #56-5]; Christopher W. Keller, *Sexual Harassment Investigations and the Fair Credit Reporting Act*, F.T.C. Div. of Financial Practices (Apr. 5, 1999) (Letter to Judi. A. Vail).[6] The consequence of such a conclusion was to require that the employer and investigating organization comply with the notice and

---

[6]*The opinion letters issued by FTC staff essentially stated "that if an employer hires outside organizations to investigate suspected workplace misconduct, such as sexual or racial harassment or workplace violence, the investigation is an 'investigative consumer report' under the FCRA and the employer and the investigator must therefore comply with the FCRA's notice and disclosure requirements[] even though the investigation does not pertain to credit or credit related matters."* H.R. REP. NO. 108-263, at 27 (2003).

disclosure provisions of the Act. These included provisions for notice to the employee of the investigation, the employee's consent prior to the investigation, and release of any resulting investigative report to the employee, among others. *See, e.g.*, 15 U.S.C. §§ 1681b, 1681d, 1681m. There was objection that application of these requirements in the indicated employment context was inconsistent with the requirements otherwise imposed on employers by Title VII and similar employment statutes.

Although the explicit legislative history is somewhat thin, it appears clear that Congress concluded the application of the various FCRA requirements to investigations of workplace misconduct would interfere with those investigations and, among other things, discourage the use of third-party organizations or individuals in conducting such investigations. *See* H.R. REP. NO. 108-263, at 27 (The purpose of Title VI of the FCRA was to "remedy the problems created by the FTC letters . . . by excluding employment investigations that are not for the purpose of investigating the employee's credit worthiness from the FCRA definition of a consumer report."). The amendment to 15 U.S.C. § 1681a(d)(2) and the addition of subsection (x) was the result.[7] The change was effected by Section 611 of Public Law 108-159. That section was the only section in "Title VI" of the law and was titled "Title VI - Protecting Employee Misconduct Investigations." Congress thus indicated a clear intention to protect employee investigations from the application of

---

[7]*The House committee report characterized the changes as providing, in part, that "communications to an employer by outside third parties hired to investigate employee misconduct or compliance with the employer's preexisting written policies will not be considered 'consumer reports' (meaning that advance notice or permission would be required)." H.R. REP. NO. 108-263, at 52.*

7

certain FCRA requirements. It did, however, attempt to strike a balance with the employee's interest in knowing information about him or her that had been obtained or considered, by providing for limited disclosure to the employee. If a third-party investigation contributes to some adverse action being taken against the employee, then the "employer" must thereafter disclose to the "consumer" a "summary containing the nature and substance" of the information upon which the adverse action was based, but excluding certain source information. 15 U.S.C. § 1681a(x). In sum, the means Congress chose to "protect the investigation" included (1) eliminating any requirement of prior notice to or consent from the employee, (2) requiring disclosures to be made only if (and after) the involved information contributed to some adverse action against the employee, (3) providing that any disclosures would be limited (i.e. a "summary" and excluding certain source information), and (4) imposing the disclosure requirement only on the "employer."

The court concludes that the Oklahoma statutes on which plaintiff seeks to rely, if applied in the circumstances alleged here, would interfere with the balance designed by Congress and that their application would be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." That conclusion flows, in part, from the fact that Congress did more in this case than just set a "floor" for protection of some class of persons, as is sometimes the case with consumer protection statutes and where, as a result, a state may prescribe different standards involving greater protections. Here, Congress deliberately sought to strike a balance between competing interests and regulatory schemes.

As to 24 Okla. Stat. § 147, which plaintiff relies on for her claim against GBS and Bernard, that section generally requires a consumer reporting agency to disclose information to the "consumer." It requires the disclosure to be upon request, rather than after any adverse action as the federal standard contemplates. It requires that "all" information be provided, rather than the limited summary required by federal law. It imposes the disclosure requirement on the consumer reporting agency, rather than the employer as required by federal law. In sum, the Oklahoma statute plainly strikes the balance between the rights of a consumer/employee and the interests of the participants in employee investigations in a materially different place than did Congress and does so in a way that would frustrate the apparent congressional purpose of protecting employee investigations. Section § 147 is therefore preempted by federal law insofar as plaintiff seeks to rely on it in the circumstances alleged here.

Section 148, upon which plaintiff bases a claim against defendant OMA, addresses notice to the consumer/employee and providing a copy of the consumer report. Plaintiff's reliance on this section involves an issue not present with her § 147 claim, because § 148 states that "as used in this section" the definition of "consumer report" provided in the FCRA shall apply. 24 Okla. Stat. § 148A. The parties dispute whether this means § 148 should be interpreted to incorporate the federal law (i.e. definition of "consumer report") in place at the time of § 148's adoption (2000) or whether it incorporates the later "subsection x" amendment to the federal definition adopted in 2003. Plaintiff relies on an Oklahoma Attorney General's opinion concluding the definition in place at the time of § 148's adoption

9

applies:

> In the absence of anything in the adopting statute and the circumstances surrounding its enactment to indicate a different legislative intent, the general rule of construction to be drawn from the cases is that a statute adopting and referring to another statute or to some of its provisions adopts and incorporates the provisions of the earlier statute as they existed at the time of the adoption, but not subsequent additions or modifications of the statute adopted, with the result that the operation of the adopting statute will not be enlarged, limited, or otherwise affected by the subsequent modification or repeal of the adopted statute.

Okl. A.G. Opin. No. 06-18, 2006 WL 1722409, at *2 (May 16, 2006) (quoting Ex parte McMahan, 237 P.2d 462, 465 (Okla. Crim. App. 1951)). There is nothing in the language employed by the Oklahoma legislature to suggest it was incorporating the federal standard "as amended from time to time" or words of similar import, and defendants provide no persuasive authority to suggest the Attorney General's conclusion as to Oklahoma law was wrong. The court concludes, as urged by plaintiff, that § 148 contemplates the "old," or pre-subsection (x), definition of "consumer report."

That conclusion does not ultimately assist the plaintiff, however, as the question then becomes whether § 148, like § 147, is preempted by federal law.[8] The court concludes that it is. Section 148 requires that notice be given to the person who is the subject of the report <u>before</u> the report is requested (from, in this case, the third-party investigator) and that a copy of the full report be provided to the person. This conflicts with the federal standard, which

---

[8]*If the conclusion were otherwise—that the subsection (x) definition should be deemed incorporated into § 148's definition of "consumer report," then plaintiff's § 148 claim would fail to state a claim for the same reasons as required the dismissal of plaintiff's similar FCRA claims. [Doc. #49].*

10

eliminates any requirement of prior notice and which requires only a limited, summary disclosure of information. In short, § 148, like § 147, strikes the balance in a materially different place than did Congress. Section 148 is therefore preempted insofar as plaintiff relies on it in the circumstances alleged.

As plaintiff's OCSOA claims would be preempted by the FCRA even if they are otherwise available to her, it is unnecessary to determine the further issue of whether a private right of action is contemplated by the Oklahoma act. For the reasons stated, defendants' motions [Doc. Nos. 55 and 56] are **GRANTED**. Plaintiff's OCSOA claims (counts 10 and 11) are **DISMISSED**.

**IT IS SO ORDERED**.

Dated this 6th day of April, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE